IN RE the RETURN OF PROPERTY:

Thomas D. CHAMPEAU, Petitioner-Respondent,†

v.

CITY OF MILWAUKEE, Respondent-Appellant.

Court of Appeals

*No. 01–2060. Submitted on briefs February 5, 2002.—Decided February 26, 2002.*

2002 WI App 79

(Also reported in 642 N.W.2d 634.)

† Petition to review filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Grant F. Langley*, city attorney and *Hazel Mosley*, assistant city attorney, Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas K. Houck*, of *Gruber Law Offices, LLC*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. The City of Milwaukee appeals from an order granting Thomas D. Champeau's WIS. STAT. § 968.20 (1999–2000)[1] petition requesting the return of three video slot machines, which were seized by police as illegal gambling devices. The City contends that the trial court erred when it ordered the return of Champeau's property because the trial court's findings that the machines were not "amusement devices" and that the "City has demonstrated . . . that the machines . . . afforded players the opportunity to obtain something of value" compel the conclusion that the machines were gambling devices. Because the trial court erred, we reverse the order and remand with directions to the trial court to enter an order denying Champeau's petition for the return of the machines.

## I. BACKGROUND

¶ 2. On January 8, 2000, City of Milwaukee Police Officer Daniel Wilcox and two detectives conducted a tavern premises check at the Rustic Inn located at 9909 West Appleton Avenue, Milwaukee, Wisconsin. As a result of the check, three video slot machines were confiscated as gambling devices.

¶ 3. On or about December 15, 2000, Thomas D. Champeau, the owner of the Rustic Inn, filed a petition for the return of property; i.e., the three video slot

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

606

machines and the $175 which was inside the machines. The trial court held an evidentiary hearing on the petition on February 1, 2001. Officer Wilcox testified as an expert in gambling devices at the hearing. He stated that the video slot machines involved here: (1) required absolutely no skill to play and were purely a game of chance; (2) required money to operate—these machines accepted only dollar bills; and (3) had the ability to reward a player. Wilcox testified that the third factor was determined by looking inside the machines, where he discovered that the machines had an adjustable payout percentage, a changeable ratio of replays or points awarded. They recorded the amount of money put into the machines as well as the number of replays or points that had been subsequently knocked off or redeemed, and each machine had an external knock-off switch. He explained that a knock-off switch is a switch that makes it possible to redeem and then zero out accumulated points. In other words, the knock-off switch allows the player to redeem winnings and allows the operator of the machine to reset the machine and account for any amounts paid out. Wilcox testified that upon inspecting the machines, he noticed that the knock-off switches on these machines had been used. Accordingly, Wilcox concluded that these machines satisfied the statutory definition of illegal gambling devices.

¶ 4. Champeau then testified that he never used the knock-off switch, that he never gave players anything of value in exchange for accumulated credits on the machines, and that he placed a sign on each machine indicating that it was to be used for amusement purposes only. The trial court found that the machines at issue were not "amusement devices," because "these machines reward the player with redeem-

607

able free replays, and because they record the number of free replays awarded to the player and change the ratio of free replays awarded . . . ." The trial court also found that "the machines in this case afforded players the opportunity to obtain something of value by awarding redeemable free replays . . . ." Nevertheless, the trial court concluded that because there was no evidence that "the patrons received any payout for the redeemable credits either through the machines or the establishment," the machines were not gambling devices. In other words, the trial court determined that because no prizes had actually been given to the players in exchange for any accumulated credits, these machines did not satisfy the statutory definition of gambling devices. As a result, the trial court ordered the City to return the three video slot machines and the $175 to Champeau.

¶ 5.   The City appeals from that order.

## II. DISCUSSION

¶ 6.   This case arises from a petition for the return of property pursuant to WIS. STAT. § 968.20, which provides in pertinent part:

> (1) Any person claiming the right to possession of property seized . . . may apply for its return . . . . The court shall . . . hold a hearing to hear all claims to its true ownership. If the right to possession is proved to the court's satisfaction, it shall order the property, *other than contraband* . . . returned.

(Emphasis added.) The trial court found that Champeau satisfied his burden of proving ownership of the property in question. Although the City disputed this issue in the trial court, it does not challenge the issue on appeal. Instead, the City contends that the property involved here is *contraband.*

¶ 7.    The City has the burden of proving by the "greater weight of the credible evidence" that the property is contraband. *Jones v. State*, 226 Wis. 2d 565, 595, 594 N.W.2d 738 (1999). Contraband is defined by statute, among other things, as "gambling machines or other gambling devices." Wis. Stat. § 968.13(1). Thus, the focus of this case was whether the City proved by the greater weight of the credible evidence that the property seized from Champeau constituted gambling machines.

¶ 8.    Wisconsin Stat. § 945.01(3), defines a "gambling machine" as:

> (a) A gambling machine is a contrivance which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance, even though accompanied by some skill and whether or not the prize is automatically paid by the machine.

> (b) "Gambling machine" does not include . . . .

>     . . . .

>     2. Any amusement device if it rewards the player exclusively with one or more nonredeemable free replays for achieving certain scores and does not change the ratio or record the number of the free replays so awarded.

As noted, the trial court found that the machines involved here both "afforded players the opportunity to obtain something of value," and were not "amusement devices." The trial court also found that the machines did in fact "change the ratio or record the number of the free replays so awarded." Wis. Stat. § 945.01(3)(b)2. The trial court, however, ruled that because there was

609

no evidence that Champeau ever provided the patrons with prizes or a payout in exchange for the accumulated redeemable credits, it could not conclude that the machines were gambling devices.

¶ 9.   This case involves the interpretation of a statute, which is a question of law that we review independently. *Spence v. Cooke*, 222 Wis. 2d 530, 536, 587 N.W.2d 904 (Ct. App. 1998). The trial court's findings of fact, however, will be reviewed under the clearly erroneous standard. Wis. Stat. § 805.17(2).

¶ 10.   In reviewing the record, we conclude that the trial court's findings of fact are not clearly errone-ous. The testimony of an expert witness, Officer Wilcox, supports the trial court's findings that these machines were not amusement devices, that they recorded the number of free replays and changed the ratio of free replays awarded, and that the machines afforded the player with the opportunity of obtaining something of value. Moreover, it is undisputed that the machines could only be operated if a patron inserted money, and that the machines' awards were based on chance.

¶ 11.   The remaining question, therefore, becomes whether the statutory definition of "gambling machine" requires that a prize or payout is actually given to the patron who is playing the video slot machine. In review-ing the statute, we conclude that the language is clear. There is no requirement that patrons actually receive payouts or prizes in exchange for the redeemable cred-its. Rather, to fall under the definition of a gambling machine, Wis. Stat. § 945.01(3) requires that the con-trivance:   (1) afford the player an *opportunity* to obtain something of value; (2) in exchange for consideration; (3) the award of which is determined by chance, even if accompanied by some skill, regardless of whether the

610

prize is paid automatically by the machine; and (4) cannot be purely an amusement device. These statutory requirements were satisfied here.

¶ 12. Officer Wilcox testified at length that the machines here were constructed to afford the player an opportunity to obtain something of value. The machines used "knock-off" switches, which allowed the owner to reset the machines. The machines recorded the number of free replays, which could be "knocked off" or redeemed on the machines. The machines changed the ratio of free replays awarded depending on the wager. The machines had in/out meters to keep track of the money placed in the machines and the amount of credits that had been redeemed. Wilcox testified that these machines were identical to the electromechanical gambling machines used in casinos.

¶ 13. According to the statutory definition, proof of "payout" is not an element required in order to show that a machine is a gambling device. Thus, the trial court erred when it found that the video slot machines here could not be gambling machines without evidence that patrons actually collected a prize or payout. The trial court's findings and the record demonstrate that the City proved that the seized property satisfied the definition of "gambling machine" and, in turn, constituted contraband, which need not be returned.[2]

_____

[2] We also note that Champeau presented a variety of facts to this court regarding the alleged inappropriate actions of Officer Wilcox and the detectives who conducted the tavern check on January 8, 2000. The City responds that these issues are not pertinent to a Wis. Stat. § 968.20 petition and should not be considered in this appeal. We agree with the City. Whether the

*By the Court.*—Order reversed and cause remanded with directions.

police followed the proper procedures or acted inappropriately during the tavern check is a matter that is not properly before this court.